UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARTINA SMART SIMMONS,
    Plaintiff

v.                                                    CASE NO. 3:15-cv-000674L

JOHN H. BARR,
JOHN HOWELL HOUSE, and
BURT BARR AND ASSOCIATES,                             JURY TRIAL DEMAND
L.L.P
    Defendants

PLAINTIFF'S FIRST AMENDED COMPLAINT

PARTIES

1. Plaintiff files this First Amended Complaint "as a matter of course" pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, given that Defendants' Rule 12(b)(6) Motion to Dismiss was filed on April 30, 2015. [Doc. Nos. 7 and 8].

2. Plaintiff is Martina Smart Simmons ("Plaintiff"), formerly known as Martina Smart, and is an individual domiciled in the state of Mississippi.

3. Defendants are:

   A. John H. Barr, a private individual who is licensed to practice law in the state of Texas;

   B. John Howell House, a private individual who is licensed to practice law in the state of Texas;

   C. Burt Barr and Associates, a Texas limited liability partnership having its principal place of business in Dallas, Texas, is a law firm that provides legal representation within the state of Texas.

Hereinafter, all defendants are referred to collectively as ("Defendants").

## JURISDICTION

4. The Plaintiff is a major domiciliary of the state of Mississippi. All Defendants are either major domiciliaries or legal entities domiciled in the state of Texas. There is complete diversity between Plaintiff and all Defendants. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332. Thus, jurisdiction is proper in this court.

## FACTUAL ALLEGATIONS

5. At all times pertinent hereto, Plaintiff was provided legal representation by Defendants in connection with her claims against one Piyush V. Patel, M.D. ("Dr. Patel") and various business entities with which he was associated.

6. At certain times pertinent hereto, Plaintiff was employed by Dr. Patel and by and through various business entities with which he was associated and which he controlled. Dr. Patel was a heart specialist and maintained a practice of medicine within the state of Texas.

7. During the course of this employment relationship, Dr. Patel committed numerous acts of sexual harassment, related intentional misconduct, and, ultimately, employment retaliation against Plaintiff.

8. On or about December 14, 2001, Plaintiff retained Defendants to represent her in connection with her claims arising from Dr. Patel's misconduct and retaliatory action. The legal representation agreement executed between Plaintiff and Defendants contains an arbitration clause, which right Plaintiff waives.

9. On August 26, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against one of Dr. Patel's affiliated companies. *See*

*EEOC v. Associates of Midland d/b/a The Heart Center d/b/a The Heart Center and Heart Place Hospital, LP,* Civ. No. 7:3-cv-123 (W.D. Texas). This resulted in an Agreed Judgment on September 23, 2004, in the EEOC action against Associates of Midland. The Agreed Judgment was in the amount of $155,000.00. The defendant company in the EEOC action had earlier filed for bankruptcy on April 2, 2004, *see infra*, which resulted in a no asset, no distribution case.

10. On November 17, 2003, Defendants filed a lawsuit on behalf of Plaintiff against Dr. Patel in a Texas state court in the matter styled *Smart v. Associates, Piyush Patel, and Patel Management Co.*, CV-44390, 238th Judicial District (Midland County, Texas).

11. In 2004 and 2005, Dr. Patel and certain of his affiliated entities filed for bankruptcy relief in the Western District of Texas. The bankruptcy proceedings included the following: *In re Associates*, No. 4-70229-rbk (Bankr. W.D. Tex); *In re Heart Place Hospital, LP*, Civ. No. 4-70521-rbk (Bankr. W.D. Tex); *In re Patel Mgmt. Co.*, No. 5-70154-rbk (Bankr. W.D. Tex.); and *In re Patel*, No. 5-70843-rbk (Bankr. W.D. Tex.). All of these bankruptcy proceedings were closed by the end of 2006.

12. There is no indication in the bankruptcy docket that Defendants took steps necessary to preserve the EEOC Agreed Judgment entered in the aforementioned proceeding. Further, Defendants took no action to protect any of Plaintiff's rights or claims in connection with any of the Patel-related bankruptcy filings.

13. On June 12, 2008, the Midland County District Court issued an Order for Status Report in the aforementioned state court proceeding. Defendants filed a Status Report on July 25, 2008, informing the court that the matter of *In re Associates* had been closed on May 24, 2005, and that Defendants "will be filing a Motion to Lift the Automatic Stay in

the near future." According to the docket for *In re Associates*, Defendants never filed a Motion to Lift the Automatic Stay.

14. On April 7, 2009, the Midland County District Court issued another Order for Status Report. Defendants filed a Status Report on April 30, 2009, which informed the court that:

> Plaintiff has undertaken an extensive investigation into the financial assets and dealings of Defendants which has necessitated the investigation on numerous domestic and foreign partnerships and companies believed to be owned or controlled by one or more of the Defendants. The final results of Plaintiff's investigation are being cross-checked and verified for presentation to the Bankruptcy Trustees(s) for action . . .

Again, the docket for *In re Associates* does not indicate that Defendants took any of the steps described in their Status Report filed with the court.

15. On January 24, 2011, without obtaining relief from the bankruptcy court, Defendants obtained for Plaintiff a Final Default Judgment in the amount of $3,000,000.00 (Three Million Dollars) against Dr. Patel which Judgment was rendered by the 238th Judicial District Court of Midland County, Texas.

16. In the course of obtaining the Final Default Judgment, Defendants required Plaintiff to present testimony to the Court in which she described Dr. Patel's behavior supporting her allegations of sexual harassment, false imprisonment, and retaliatory discharge. Defendants' behavior in requiring that Plaintiff relive those circumstances in a courtroom setting was unconscionable and is indicative of heightened culpability given that Defendants knew or should have known that, by then, they had created circumstances that fully deprived Plaintiff of all of her legal rights to recover against Dr. Patel.

17. On March 9, 2012, Defendants filed an abstract of the Final Default Judgment in the public records of Midland County, Texas.

18. On May 31, 2014, Dr. Patel's attorney for his bankruptcy proceeding, *In re Patel*, wrote a letter to Mr. Barr informing him that Martina Smart's efforts to continue to collect a debt that is discharged is a violation of federal law. The letter further stated:

> Please instruct your client to immediately remove the lien against real property in Denton County, Texas. We will expect that shortly thereafter she will take steps to nullify the judgment and remove its impact on my client. If Ms. Smart does not act with all haste, we will notify the bankruptcy court and seek a motion for contempt and damages.

Subsequently, Dr. Patel's bankruptcy attorney reopened Dr. Patel's bankruptcy proceeding (*In re Patel*), ostensibly to seek a contempt ruling and damages against Plaintiff due to violations of the Bankruptcy Court's Automatic Stay. Thus, Defendants' behavior exposed Plaintiff to unwarranted civil liability and contempt.

19. After the entry of the January 24, 2011 Final Default Judgment, Defendants continued to communicate to Plaintiff that they were working on obtaining relief for her from both the EEOC Agreed Judgment and the Final Default Judgment, despite the fact that they were aware that all of the bankruptcy proceedings had been closed for years and that they had not taken the necessary steps to preserve Plaintiff's claims arising from Dr. Patel's intentional torts. Additionally and inexplicably, Defendants, or their employees, represented to the Plaintiff that they were considering liquidating her Judgments through efforts to sell it to a third party. These assurances were communicated in numerous telephone conversations between Defendants, Defendants' employees, and Plaintiff between approximately January 24, 2011, and June 19, 2014.

20. Although Defendants were aware that Dr. Patel and certain of his affiliated entities had filed for bankruptcy relief, Defendants failed to properly preserve Plaintiff's claims by failing to take the procedural and substantive steps necessary to protect her claims in the various bankruptcy proceedings; by failing to obtain relief from the Automatic Stay in the various bankruptcy proceedings prior to a determination of Plaintiff's claims; by failing to object to Dr. Patel's discharge of Plaintiff's claims in his personal bankruptcy proceeding; by failing to object to the discharge of Plaintiff's claims in the various related bankruptcy proceedings; and by failing to undertake due diligence inquiries into the financial status of Dr. Patel and his various entities to determine if other avenues of recovery might be available to Plaintiff.

21. Plaintiff's claims arose from conduct committed by Dr. Patel which conduct was a continuing, intentional tort and thus, Plaintiff's resulting claims were nondischargeable in his personal bankruptcy proceeding; and should not have been dischargeable in the various related bankruptcy proceedings.

22. Plaintiff was unaware of this legal malpractice until she received a June 19, 2014, letter from Mr. House, which stated that her "claims which were the subject of the lawsuit we filed on your behalf against Dr. Patel were discharged in bankruptcy before we obtained the judgment on your behalf" and that Defendants:

> did not file a Proof of Claim on your behalf or object to the Bankruptcy court's discharging Dr. Patel's debts. As such, all the claims that we pursued on your behalf were discharged in bankruptcy before we obtained the judgment on your behalf and that continuing to pursue the claims and attempts to collect on the judgment violates the Orders of the Bankruptcy Court and are subject to sanction.

The letter further stated that:

We have searched our computer files and found that the enclosed Order Combined With Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines was received by our office. I cannot tell you that I reviewed the document when it came in; but, it was certainly my responsibility to do so. I did not file a Proof of Claim on your behalf or object to the Bankruptcy Court discharging Dr. Patel's debts. As such, all the claims that we pursued on your behalf were discharged and the judgment that we took against Dr. Patel is not any good.

## COUNT I – LEGAL MALPRACTICE

23. The failures and omissions of Defendants described herein constitute legal negligence and were the proximate cause of Plaintiff losing her rights to recovery for the hereinabove described claims against Dr. Patel and the companies with which he was affiliated.

## COUNT II – NEGLIGENT INFLICTION OF MENTAL ANGUISH AND EMOTIONAL DISTRESS

24. As a consequence of Defendants' negligent conduct, Plaintiff has suffered and continues to suffer mental anguish and emotional distress.

25. Defendants' negligent conduct was so egregious and unconscionable that it rises to the level of heightened culpability.

## COUNT III – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

26. Plaintiff was a consumer of services from Defendants under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.*

27. Defendants committed numerous wrongful acts that were false, misleading, or deceptive to the Plaintiff, pursuant to Tex. Bus. & Com. Code § 17.49(c) and (d), including but not limited to:

    A. Making express misrepresentations of material facts that cannot be characterized as advice, judgment, or opinion;

  B. Failing to disclose information concerning services which was known at the time of the transaction when such failure to disclose such information was intended to induce the Plaintiff into a transaction into which she would not have entered had the information been disclosed, including, but not limited to, the presentation of testimony in state court to obtain the Final Default Judgment;

  C. Committing an unconscionable course of action that cannot be characterized as advice, judgment, or opinion, including, but not limited to, the Defendants' misrepresentations to the Plaintiff and the Defendants' misrepresentations to the state court on the Plaintiff's behalf;

28. Plaintiff is entitled to damages for economic damages and mental anguish because Defendants' actions described in the Factual Allegations, *supra*, were false, misleading, deceptive, and unconscionable; and were enumerated in section 17.49(c) of the Texas Business and Commercial Code.

## DAMAGES

29. Plaintiff specifies the amount of her damages to be $3,155,000.00, plus applicable legal interest and all recoverable costs which amount represents the judicially awarded amounts based upon the facts presented to the tribunals which rendered the hereinabove described judgments; and an additional amount to be determined by this Court to compensate her for the mental anguish and emotional distress that she has suffered as a consequence of Defendants' negligent and unconscionable conduct.

30. Plaintiff is entitled to attorney's fees and court costs pursuant to Tex. Bus. & Com. Code § 17.50(d).

31. Plaintiff is entitled to exemplary damages due to Defendants' acts of gross negligence pursuant to Tex. Civ. Prac. & Remedies Code § 41.003(a).

WHEREFORE, PLAINTIFF PRAYS for trial by jury and that after due proceedings are had that there be judgment herein in her favor and against Defendants, jointly and *in solido*, as follows:

    A.    In the amount of $3,155,000, together with appropriate legal interest and all costs of these proceedings.

    B.    For any and all damages and or relief to which Plaintiff may be entitled, including, but not limited to, compensation for mental anguish and emotional distress, her costs, attorney fees, interest, and expenses in pursuing this action, together with whatever exemplary damages may be appropriate.

Date: 05/19/2015

Respectfully Submitted,

/s/Brian E. Dollar
Brian E. Dollar
Texas Bar No. 24082925
DOLLAR LAW FIRM, L.L.C.
P.O. Box 14310
Monroe, Louisiana 71207-4310
Telephone: 318-387-9000
Facsimile: 318-387-9976
brian.dollar@thedollarlawfirm.com